1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN M. MARTIN,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,[1/]<br><br>          Defendant. | Case No. CV 12-8470 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

Shawn M. Martin ("Plaintiff") challenges the Social Security Commissioner's decision denying her application for supplemental security benefits. Four issues are presented for decision here, namely (1) whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff's condition did not meet listing level severity, (*see* Joint Stip. at 3-5, 23-25); (2) whether the ALJ failed to account for additional severe impairments, (*see id.* at 25-26, 30); (3) whether the ALJ erred in assessing Plaintiff's residual functional capacity, (*see id.* at 31-32, 37-38); and (4) whether the ALJ improperly rejected Plaintiff's credibility, (*see id.* at 38-40, 46-47).

---

[1/]  Carolyn W. Colvin is substituted as the proper Defendant herein. *See* Fed. R. Civ. P. 25(d).

The Court addresses – and rejects – each of Plaintiff's contentions below.

## A. The ALJ's Listings Analysis

### 1. Background

First, Plaintiff claims that the ALJ erred in her analysis of whether Plaintiff met Listing 12.04 for Affective Disorders. Specifically, Plaintiff argues that the ALJ's analysis is incomplete because she focused only on the requirements of paragraph B of the Listing and failed to analyze the criteria in paragraph A. (Joint Stip. at 3-5, 23-25); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.04. After discussing the evidence of record and rejecting some of the opinions of Plaintiff's treating psychologist A.M. Aragon, Ph.D., the ALJ found that Plaintiff did not meet the paragraph B criteria and thus did not meet Listing 12.04. (Administrative Record ("AR") at 22-24.)[2]

### 2. Failure to Address Paragraph A Criteria

If a plaintiff establishes that she suffers from a "severe" impairment, or combination of "severe" impairments, that meets or equals a listed impairment as set forth in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, she is deemed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.92(a)(4)(iii). The plaintiff has the burden to prove that she has an impairment that meets or equals the criteria listed in Appendix 1. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To meet a listed impairment, a disability claimant must establish that her condition satisfies *each* element of the listed impairment in question. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

Under Listing 12.04, "[t]he required level of severity for [affective disorders] is met when the requirements in both A *and* B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.04

---

[2] Although the ALJ further found that Plaintiff did not meet the criteria in paragraph C, (AR at 24), Plaintiff does not challenge this determination.

(emphasis added). The listing plainly requires that the claimant meet both the paragraph A and paragraph B criteria in order to establish a listing level impairment.

Here, because the ALJ found the evidence did not support Plaintiff's claim with respect to the paragraph B criteria, she was not obligated to further analyze the paragraph A criteria. *Zebley*, 493 U.S. at 530 (claimant must establish that her condition satisfies every element of the listing); *Tackett*, 180 F.3d at 1099 (same).

### 3. Decision Regarding Paragraph B Criteria

To the extent that Plaintiff argues that the ALJ erred in finding that she did not meet the paragraph B criteria, her claim still fails. The only evidence that Plaintiff met the requirements of paragraph B of Listing 12.04 was the checkbox form completed by Dr. Aragon. (AR at 346.) Specifically, Dr. Aragon reported that Plaintiff had marked restrictions in activities of daily living and difficulties in maintaining social functioning, each of which are listed in paragraph B of Listing 12.04. (*Id.*) However, the ALJ properly rejected Dr. Aragon's opinions.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *accord Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Where the "treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (citation omitted). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

Here, the ALJ rejected Dr. Aragon's opinion with respect to the paragraph B

criteria because they were inconsistent with the psychologist's other findings and the other medical evidence of record. (AR at 22-23.) This was a specific and legitimate reason for rejecting Dr. Aragon's assessment of the paragraph B criteria.

First, although Dr. Aragon concluded that Plaintiff had marked restrictions in activities of daily living, his other findings within the same report are inconsistent with this conclusion. For example, according to Dr. Aragon, Plaintiff did not have difficulty thinking or concentrating; she did not have psychomotor agitation or retardation; she did not have a disturbance of vision, speech, hearing, or movement; she had no hallucinations and was not catatonic; she did not suffer a memory impairment; and her sleep was not disturbed. (*Id.* at 343.) Dr. Aragon also reported that Plaintiff's loss of interest in activities occurred only "[at] times," and that she could perform most mental abilities to do unskilled work. (*Id.* at 343-45.) Finally, Dr. Aragon reported that Plaintiff could function independently outside her home, travel, and could manage benefits in her own best interest. (*Id.* at 346, 347.)

Similarly, Dr. Aragon's conclusion that Plaintiff had marked difficulties in maintaining social functioning is not supported by his other findings. Dr. Aragon noted that Plaintiff did not have a change in personality, did not have inappropriate suspicions, was not emotionally withdrawn or isolated, did not have unstable interpersonal relationships, and had a satisfactory ability to get along with peers without distracting them or exhibiting behavioral extremes. (*Id.* at 343, 344.)

Thus, the ALJ properly rejected Dr. Aragon's findings regarding the paragraph B criteria, and properly found that Plaintiff did not meet Listing 12.04.

    B.    <u>The ALJ's Assessment of Plaintiff's Severe Impairments</u>

        1.    <u>Severe Impairments</u>

Plaintiff next argues that the ALJ erred by failing to include within the list of Plaintiff's severe impairments her complaints of lower back pain, heartburn, reflux, stomach pain, diabetes mellitus, and anxiety. (Joint Stip. at 25-26, 30.)

Although an ALJ found that Plaintiff's lumbar spine condition was severe at

the time of Plaintiff's previous social security application, there is no evidence in the record to support a finding that Plaintiff's lumbar spine condition continued to amount to a severe impairment. Indeed, the diagnoses and treatment after Plaintiff's back injury was exacerbated by an accident focused only on cervical and thoracic spine pain. Significantly, approximately two months into treatment, Plaintiff's thoracic spine had made a "remarkable recovery," (*id.* at 384), leaving symptoms only in Plaintiff's cervical spine. (*Id.* at 351-403.) And, a consultative examination revealed only mild findings with respect to Plaintiff's lumbar spine. (*Id.* at 406-07.)

Next, there are notes in the record regarding Plaintiff's complaints of abdominal and pelvic pain, as well as a generalized diagnosis of gastroesophageal reflux disease ("GERD"). (*Id.* at 314, 416, 417.) However, there is no evidence that Plaintiff suffers any limitations as a result of her abdominal symptoms.[3]

Plaintiff also complains that the ALJ should have considered her diabetes mellitus. However, there is simply no evidence in the record that Plaintiff has been diagnosed with diabetes. The only evidence in this regard is a single blood test in which Plaintiff had an elevated glucose level. (*Id.* at 244.) This single test is insufficient to warrant a finding that Plaintiff suffered from diabetes, and does not support a finding that Plaintiff suffers any limitations as a result of this disease.

Finally, it appears that the ALJ considered Plaintiff's anxiety within her diagnosis of depression, an analysis that is supported by the record. (*Id.* at 20, 318, 323, 342, 343.)

To the extent that Plaintiff also argues that the ALJ failed to consider all of Plaintiff's alleged impairments, regardless of severity, her claim also fails. The ALJ considered *all* of the alleged impairments at issue and found that they did not result

---

[3] Plaintiff also has a history of hysterectomy and appendectomy, but there is no evidence that she suffered any complications from surgery or any other ongoing symptoms. (AR at 405.)

in more severe limitations on Plaintiff's ability to work.[4] (AR at 20-24.) As detailed above, the medical evidence supports this conclusion.

### 2. Classification of Plaintiff's Mental Health Impairment

Plaintiff further faults the ALJ for classifying her mental health impairment as "depressive disorder," despite evidence that Plaintiff suffered from "major depression with psychotic features." (Joint Stip. at 26.) However, by classifying Plaintiff's impairment as "depressive disorder," the ALJ did not necessarily dispute that Plaintiff's depression was major. In fact, the ALJ did not otherwise classify Plaintiff's depressive disorder as moderate or mild. In addition, in addressing Plaintiff's mental health impairment, the ALJ considered *all* of the evidence related to her depressive disorder. (AR at 22-24.) And, in rejecting Plaintiff's subjective complaints, the ALJ also noted that Plaintiff's reports of psychotic symptoms were inconsistent. Accordingly, the ALJ's classification of Plaintiff's mental health impairment was supported by the record.

### C. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

In her next claim, Plaintiff argues that the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") did not account for her neck, shoulder, hand, and back pain. (Joint Stip. at 31-32, 37-38.)

The ALJ concluded that Plaintiff maintained the RFC to perform "simple, repetitive [] medium work as defined in 20 CFR 416.967(c) with occasional overhead reaching and with no more than occasional exposure to the general public and coworkers." (AR at 24.)

Here, Plaintiff fails to cite to evidence that would support a more restrictive RFC. Plaintiff explains that she had positive findings upon examination of her back and shoulder, and that an MRI supported these findings. But, the ALJ did not

---

[4] The ALJ did not consider Plaintiff's alleged diabetes. However, as explained above, there is no evidence that Plaintiff suffers from this disease.

6

dispute that she had severe impairments of her back and shoulder. Instead, the record simply does not support a finding that these severe impairments resulted in an RFC more restrictive than that provided for by the ALJ. In addition, while Plaintiff complained of hand pain and was diagnosed with wrist tendonitis and carpal tunnel syndrome, (*id.* at 416, 418), none of the treating or examining sources suggested that Plaintiff's hand pain resulted in physical limitations.

The Court recognizes that Plaintiff's chiropractor suggested that she reduce or modify her activity while she was under treatment for her injuries. However, there is no evidence that the chiropractor suggested that Plaintiff's activity be similarly limited after her treatment concluded, other than generic precautions aimed at preventing an exacerbation of symptoms. (AR at 357-58.) Ultimately, none of Plaintiff's doctors suggested that her physical activities were more severely limited or precluded by her impairments.[5]

Thus, the Court finds that the ALJ did not err in assessing Plaintiff's RFC.

4. The ALJ's Assessment of Plaintiff's Testimony

Finally, Plaintiff asserts that the ALJ improperly assessed her credibility. (Joint Stip. at 38-40, 46-47.) The Court disagrees.

An ALJ can reject a claimant's subjective complaints by expressing clear and convincing reasons for doing so. *Benton*, 331 F.3d at 1040. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Here, the ALJ presented at least *four* clear and convincing reasons for rejecting Plaintiff's credibility.

First, the ALJ noted that Plaintiff's subjective complaints are contradicted by

---

[5] The remainder of Plaintiff's argument is premised on her subjective assessment of her own limitations. However, as discussed below, the ALJ properly rejected Plaintiff's subjective complaints.

7

the findings of agency psychiatrist R.E. Brooks, M.D. (AR at 25.) Despite Plaintiff's complaints of severe psychiatric symptoms, Dr. Brooks found fairly mild limitations. (*Id.* at 277-92.) "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Of course, "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added). However, as explained below, the ALJ did not rely solely on the lack of objective medical findings in rejecting Plaintiff's credibility.

      Second, the ALJ explained that Plaintiff's medical treatment was irregular and infrequent, and that there was no evidence of ongoing physical or occupational therapy, or other rehabilitative treatment. (AR at 25.) The record reveals that Plaintiff underwent rather conservative treatment for her back, when she received any treatment at all. The most extensive treatment she received for her back impairment was the chiropractic care from Wilmore Premier Health Group, in which she received only one course of physical therapy. (*Id.* at 351-03.) Although Plaintiff has claimed that she refused recommended surgery and epidural injections, there is no indication in the record that such forms of treatment were recommended. (*Id.* at 37-38.) Further, there is no evidence in the record that Plaintiff had been prescribed narcotic pain medication. (*See id.* at 36, 37, 251.) The ALJ thus properly relied on Plaintiff's conservative treatment to reject her more severe subjective complaints. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

      Third, the ALJ correctly rejected Plaintiff's credibility based upon her noncompliance with mental health treatment. (AR at 25.) The record reflects that Plaintiff frequently missed or rescheduled mental health appointments. (*Id.* at 256-58, 267, 342.) She also had to be reminded to be treatment compliant and, at times,

was completely noncompliant. (*Id.* at 257, 259-60, 342.) Noncompliance with a prescribed course of treatment is a relevant consideration in assessing a plaintiff's credibility, especially where, as here, a plaintiff's mental health symptoms *improve* with required medication. *Bunnell*, 947 F.2d at 346; (*id.* at 262, 331, 425.)

Finally, the ALJ explained that Plaintiff had a history of polysubstance abuse and that her statements with respect to her alleged cessation of drug and alcohol use were inconsistent. This reason is fully supported by the record. For example, at the 2011 hearing before the ALJ, Plaintiff claimed that she had stopped using drugs and alcohol nine years prior. (*Id.* at 43, 45, 320.) However, the record indicates more recent drug and alcohol use. On February 1, 2008, for example, Plaintiff claimed she had consumed alcohol the day before and that she had stopped using drugs in 2005. (*Id.* at 320.) On the same day, she admitted that she suffered a drug possession conviction. (*Id.* at 320, 321, 323.) In addition, on June 2, 2010, Plaintiff admitted that she drank two beers most days and had done so for the previous 20 years. (*Id.* at 418.) Finally, Plaintiff's treating psychiatrist questioned whether Plaintiff had recently abused controlled substances. (*Id.* at 260.) In sum, Plaintiff's inconsistent statements are proper bases on which her credibility can be rejected. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Accordingly, the Court finds that substantial evidence supported the ALJ's decision regarding Plaintiff's credibility.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: August 26, 2013

_____

Hon. Jay C. Gandhi

United States Magistrate Judge